SCOTT (LLOYD v.). See Case No. 8,434.
SCOTT (LOUDON v.). See Case No. 8,526.

---

## Case No. 12,540.

### SCOTT v. LUNT.

[3 Cranch, C. C. 285.] [1]

Circuit Court, District of Columbia. April Term, 1828.

LANDLORD AND TENANT — DEATH OF TENANT — ACTION AGAINST ADMINISTRATOR.

The assignee of a ground-rent, in fee, may maintain an action of covenant against the administrator of the original grantee, for rent accruing after the death of that grantee, although the land has descended to his heirs, subject to the rent.

Covenant by [Richard M. Scott] the assignee of the ground-rent of a lot in Alexandria, conveyed in fee, by the late General George Washington, to Ezra Lunt, who covenanted for himself, his heirs, and assigns, to pay an annual rent of $73 forever. The declaration and oyer set forth the original deed from General Washington to Ezra Lunt, in fee, reserving an annual ground-rent of $73 forever; the covenant, on the part of Lunt, to pay the rent; the assignment of the rent, by General Washington, to the plaintiff; the death of Lunt; the granting of administration of his estate to the defendant; and the accruing of the rent since his death.

Mr. Taylor, for defendant, after oyer, de-

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

murred to the declaration, and contended that the action could not be maintained.

The question was, at the last term, submitted to the court by Mr. Taylor, for defendant, and Mr. Swann, for plaintiff.

THE COURT considered it in the vacation, and its opinion (THRUSTON, Circuit Judge, absent) was now delivered by CRANCH, Chief Judge.

The late General George Washington conveyed a certain lot of land in Alexandria to Ezra Lunt, in fee, reserving an annual rent of $73; and there was an express covenant by Lunt, for himself, his heirs, and assigns, to pay the rent. Lunt died, and this action of covenant is brought against his administrator for rent which accrued after his death, and, consequently, after the land had descended to his heirs at law.

Mr. Taylor, for defendant, contended that as the estate became vested in the heirs by the act of the law, and not by the voluntary assignment of the lessee, the privity of contract was destroyed, as well as the privity of estate, between the assignee of the lessor and the personal representatives of the lessee. The lessee, after a voluntary assignment, may be liable upon his express covenant; because he has voluntarily parted with the estate, and may take counter security from his assignee. But the law, which takes away the estate, for the enjoyment of which the rent is given, would be unjust if it left the lessee liable for the rent; and the person who acquires the estate in the right of the lessee would stand in a much better situation than the lessee himself, as he would have the whole benefit of the estate without its burden. "Nemo debet locupletari aliena jactura."

No authority was cited by Mr. Taylor in support of this view of the case. It was, however, probably suggested by what fell from Mr. Justice Yates, in the case of Mayor v. Steward, 4 Burrows, 2439, 2443, namely, "As the act devests him of his whole estate, and renders him absolutely incapable of performing the covenant, it would be a hardship upon him if he should remain still liable to it when he is disabled by the act of parliament from performing it;" and by the arguments of the counsel in that case, and in the case of Mills v. Auriol, 1 H. Bl. 443, and of Auriol v. Mills, 4 Term R. 94. But those arguments were overruled by the judgment of the court.

It is said, however, that those cases were under the bankrupt act; and that the assignment, being in consequence of the act of the bankrupt himself, the property cannot strictly be said to have passed out of him, by the act of the law, without his own concurrence.

Some countenance is given to this idea by the language of Lord Loughborough, in Mills v. Auriol, 1 H. Bl. 444. But the opinion of the court of king's bench in the same case, in 4 Term R. 98, does not seem to have been at all influenced by that consideration. Lord Kenyon, in delivering the opinion of the court there, says: "It is extremely clear that a person who enters into an express covenant in a lease, continues liable on his covenant, notwithstanding the lease be assigned over. The distinction between the actions of debt and covenant, which was taken in early times, is equally clear. If the lessee assign over the lease, and the lessor accept the assignee as his lessee, either tacitly or expressly, it appears, by the authorities, that an action of debt will not lie against the original lessee; but all those cases, with one voice, declare that if there be an express covenant, the obligation upon such covenant still continues." "It cannot be disputed that, where a disposition of the lease has been made by virtue of a fieri facias, or an elegit, the lessee continues liable upon his covenant, notwithstanding the estate be taken from him against his consent. On the same principle, the South Sea director was held liable, although he was devested of his property by the act of confiscation. Hornby v. Houlditch, Andr. 40; 1 Term R. 93, note a. So in the case of an attainder, and other cases." "Then it was contended that the bankruptcy put an end to the contract; but that argument is not well founded. For it was asked by Lord Hardwicke, in the case of Hornby v. Houlditch, what is there here to discharge the privity of contract, or estate, between the lessor and lessee? or what is there to discharge an express covenant?" "I may ask the same questions in this case. Has the landlord done any act to discharge the lessee? Even in cases where the landlord has expressly consented to receive the assignee as his tenant, the original lessee has always been held liable on his covenant; and those, in my opinion, are much stronger cases than the present, where the assignees are forced upon the landlord without his consent."

In the case of Kunkle v. Wynick, 1 Dall. [1 U. S.] 305, the plaintiff had conveyed a lot of land to the defendant in fee, rendering an annual rent; the defendant had assigned his interest in the premises before any rent had become due; and the plaintiff had received one year's rent from the assignee. The plaintiff brought his action of covenant against his original grantee, and recovered judgment.

The difference between that case and this is, that there the assignment was voluntary, and the plaintiff had accepted rent from the assignee; but here was no assignment, and no acceptance of rent from the heirs at law by the plaintiff; and no other act of the plaintiff waiving his right of action upon the covenant. The original grantee of the land knew that upon his dying seized, and intestate, the land would descend to his heirs at law, and that his administrator would be bound by the covenant. There is no more hardship in this case than in that of a mortgage, where the administrator may be compelled, by the bond or covenant of the intestate, to pay the mortgage-money for the benefit of the heir at law; or in that of a contract to purchase land, and

the purchaser has given his bond for the purchase-money, the land being conveyed upon the faith of the personal security. The land would descend to the heirs, and the personal obligation would devolve on the administrator, who, if obliged to pay the money, could not compel the heirs to refund it.

Upon the authority of these cases cited by the plaintiff's counsel, as well as upon the general principles of reason and law, we think the plaintiff is clearly entitled to maintain his action of covenant against the administrator.

This opinion is substantially affirmed by the supreme court of the United States in Scott v. Lunt, 7 Pet. [32 U. S.] 602, per Story, J. See, also, Pember v. Mathers, 1 Brown, Ch. 52.

[NOTE. Upon the trial of the case, there was verdict and judgment in favor of the defendant, upon his plea of re-entry by plaintiff. The plaintiff sued out writ of error in the supreme court, and the case was first heard upon motion of defendant to dismiss for want of jurisdiction. Motion overruled. 6 Pet. (31 U. S.) 349. Subsequently the court reversed the court below upon certain instructions given and refused upon the plea of re-entry. 7 Pet. (32 U. S.) 596.]